**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Malibu Media, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  17 CV 8429 |
| v. | ) | |
| | ) | Honorable Gary Feinerman |
| Donald Adams, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

---

NOW COMES Defendant, Don Adams, through counsel, and answers the Amended Complaint as follows:

1.    This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. ¶¶ 101 et seq. (the "Copyright Act")

**ANSWER**:    Defendant admits only that this is an action alleging direct infringement and denies the remaining allegations of paragraph 1.

2.    Defendant is a persistent online infringer of Plaintiff's copyrights. Defendant's IP address as set forth on Exhibit A was used to illegally distribute each of the copyrighted movies set forth on Exhibit B.

**ANSWER**:    Denied.

3.    Plaintiff is the registered owner of the copyrights set forth on Exhibit B (the "Copyrights-in-Suit")

**ANSWER**:    Defendant lacks sufficient knowledge to admit or deny the allegations of paragraph 3, and therefore denies same and demands strict proof thereof.

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (patents, copyrights, trademarks and unfair competition).

**ANSWER**:    Admitted.

5.    Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District, and therefore this Court has personal jurisdiction over the Defendant because (i) Defendant committed the tortious conduct alleged in this Complaint in this State, and (ii) Defendant resides in this State and/or (iii) Defendant has engaged in substantial and not isolated business activity in this State.

**ANSWER:**    Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 5, and therefore denies same and demands strict proof thereof, specifically with regard to Plaintiff's "geolocation technology."

6.    Based upon experience filing over 1,000 cases the geolocation technology used by Plaintiff has proven to be accurate to the District level in over 99% of the cases.

**ANSWER**:    Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 6, and therefore denies same and demands strict proof thereof, specifically with regard to Plaintiff's allegation of accurate calculations.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and (ii) the Defendant resides (and therefore can be found) in this District and resides in this State; and additionally, venue is proper in this District pursuant 28 U.S.C. § 1400 (a) (venue for copyright cases) because Defendant or Defendant's agent resides or may be found in this District.

**ANSWER:**     Defendant admits only that he resides in this District. All remaining allegations in paragraph 7 are denied.

## Parties

8.     Plaintiff, Malibu Media, LLC (d/b/a "X-Art.com") is a limited liability company organized and existing under the laws of the State of California and has its principal place of business located at 30700 Russell Ranch Road, Suite 250, Westlake Village, CA 91362.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 8, and therefore denies same and demands strict proof thereof.

9.     Defendant, Donald Adams, is an individual residing at 14 Ashcroft Ct, Bolingbrook, IL 60490.

**ANSWER**:     Admitted.

10.     The BitTorrent file distribution network ("BitTorrent") is one of the most common peer-to-peer file sharing systems used for distributing large amounts of data, including, but not limited to, digital movie files.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 10, and therefore denies same and demands strict proof thereof.

11.     BitTorrent's popularity stems from the ability of users to directly interact with each other in order to distribute a large file without creating a heavy load on any individual source computer and/or network. The methodology of BitTorrent allows users to interact directly with each other thus avoiding the need for intermediary host websites which are subject to DMCA takedown notices and potential regulatory enforcement actions.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 11, and therefore denies same and demands strict proof thereof.

12.     In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces. Users then exchange these small pieces among each other instead of attempting to distribute a much larger digital file.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 12, and therefore denies same and demands strict proof thereof.

13.     After the infringer receives all of the pieces of a digital media file, the infringer's BitTorrent client software reassembles the pieces so that the file may be opened and utilized.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 13, and therefore denies same and demands strict proof thereof.

14.     Each piece of a BitTorrent file is assigned a unique cryptographic hash value.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 14, and therefore denies same and demands strict proof thereof.

15.     The cryptographic hash value of the piece ("piece hash") acts as that piece's unique digital fingerprint. Every digital file has one single possible cryptographic hash value

correlating to it. The BitTorrent protocol utilizes cryptographic hash values to ensure each piece is properly routed amongst BitTorrent users as they engage in file sharing.

**ANSWER**: Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 15, and therefore denies same and demands strict proof thereof.

16. The entirety of the digital media file also has a unique cryptographic hash value ("file hash"), which acts as a digital fingerprint identifying the digital media file (which contains a video or series of videos). Once infringers complete downloading all pieces which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate.

**ANSWER**: Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 16, and therefore denies same and demands strict proof thereof.

17. Plaintiff's investigator, IPP International UG established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A.

**ANSWER**: Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 17, and therefore denies same and demands strict proof thereof, specifically with regard to the investigator's "direct TCP/IP connection with the Defendant's IP address…"

18. Plaintiff's investigator downloaded from Defendant one or more pieces of each of the digital media files identified by the file hashes on Exhibit A.

**ANSWER**: Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 18, and therefore denies same and demands strict proof thereof, specifically with regard to any pieces of any digital media files.

5

19.     Each digital media file as identified by the file hash listed on Exhibit A correlates to a copyrighted film owned by Plaintiff, as set forth on Exhibit B.

**ANSWER:**     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 19, and therefore denies same and demands strict proof thereof.

20.     A full copy of each digital media file was downloaded from the BitTorrent file distribution network, and it was confirmed through independent calculation that the file hash correlating to each file matched what is listed on Exhibit A. At no point was Plaintiff's copyrighted content uploaded to any other BitTorrent user.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 20, and therefore denies same and demands strict proof thereof.

21.     Each digital media file as identified by the file hash listed on Exhibit A has been verified to contain a digital copy of a movie that is identical (or alternatively, strikingly similar or substantially similar) to Plaintiff's corresponding original copyrighted work listed on Exhibit B.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 21, and therefore denies same and demands strict proof thereof

22.     Plaintiff owns the copyrights to the original works (the Copyrights-in-Suit"). An overview of the Copyrights-in-Suit, including each hit date, date of first publication, registration date, and registration number issued by the United States Copyright Office is set forth on Exhibit B.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 22, and therefore denies same and demands strict proof thereof.

23.    Defendant downloaded, copied, and distributed a complete copy of Plaintiff's works without authorization as enumerated on Exhibits A and B.

**ANSWER**:    Denied.

24.    Plaintiff's investigator connected, over a course of time, with Defendant's IP address for each digital file identified by the hash value as listed on Exhibit A. The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash value listed on Exhibit A is included within the column labeled Hit Date UTC. UTC refers to Universal Time which is utilized for air traffic control as well as for computer forensic purposes.

**ANSWER**:    Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 24, and therefore denies same and demands strict proof thereof

25.    Plaintiff's evidence establishes that Defendant is a habitual and persistent BitTorrent user and copyright infringer.

**ANSWER**:    Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 25, and therefore denies same and demands strict proof thereof

26.    All conditions precedent to bringing this action have occurred or been waived.

**ANSWER**:    Denied.

27.    Plaintiff has retained counsel and is obligated to pay said counsel a reasonable fee for its services.

**ANSWER**:    Denied.

28.    The allegations contained in paragraphs 1 – 27 are hereby re-alleged as if fully set forth herein.

**ANSWER**:    None required.

29.     Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 29, and therefore denies same and demands strict proof thereof.

30.     By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

**ANSWER**:     Denied.

31.     Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

**ANSWER**:     Defendant lacks personal knowledge to admit or deny the allegations contained in paragraph 31, and therefore denies same and demands strict proof thereof.

32.     As a result of the foregoing, Defendant violated Plaintiff's exclusive right to [sections A – D are not restated here]

**ANSWER**:     Denied.

33.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504()(2).

**ANSWER**:     Denied.

Wherefore, Plaintiff respectfully requests that the Court [sections A – F are not restated here]:

**ANSWER TO PARAGRAPH A – F OF PRAYER FOR RELIEF**:     Defendant     denies     any wrongdoing, denies Plaintiff is entitled to any recovery, and further states that he should be entitled to his own attorneys' fees for defending this matter.

**AFFIRMATIVE DEFENSES**

**I.       FAILURE TO MITIGATE DAMAGES**

1.  Plaintiff has made no attempt to mitigate any actual or perceived damages, including but not limited to sending out DMCA take-down notices to the ISP for the IP address.  The cost of sending DMCA notices is practically negligible compared to the cost of filing a lawsuit and the process of sending DMCA notices can be automated.  The sending of DMCA notices to the ISP can result in the termination of the internet account, solving the alleged problem for X-ART.  It also puts the account holder on notice to and allows them the opportunity to take additional reasonable steps, such as changing a password on the router, etc.

2.  Plaintiff makes no attempt to mitigate damages by using appropriate technology to disrupt the purported infringing swarms by using available electronic countermeasures.

3.  Plaintiff has made no attempt to mitigate damages by not immediately sending cease and desist notices by counsel to the ISP.

**II.  IMPLIED LICENSE, CONSENT, AND WAIVER – PORNHUB DISTRIBUTION**

4.  Plaintiff distributes its movies for fee on the internet via such portals as Pornhub. (www.pornhub.com).  Pornhub is a "porn aggregator" allowing those interested in pornography to view, without charge, millions of licensed and unlicensed content.   Pornhub has been widely criticized in the industry as a portal that promotes infringement of pornographic works. Since Pornhub has high viewership (since the porn that is provided is free), it is used by porn studios to distribute and market their products. On good faith and belief Plaintiff and Pornhub have entered into a contract for distribution of these works and Plaintiff has the ability to control this distribution via their contractual relationship. Pornhub takes no measures to inform the user that

the movies are either copyright protected or subject to a limited license to view the X-Art movies.

A simple search using the Google search engine with the terms "Pornhub" and "X-Art" verifies

this fact: the first search entry is "Watch **X Art** Hd porn videos for free, here on **Pornhub**.com"



5.  X-Art also does not include in their movies the industry standard warning notice movies

(i.e. with an "FBI Warning Notice") to gives notice to viewers that their content is protected.   This

failure to provide notice to viewers using industry practice acts as a de-facto waiver of rights.



### III.  UNCLEAN HANDS AND INEQUITABLE CONDUCT

6.  Plaintiff has unclean hands in the procurement of the copyrights at issue in this case regarding the failure to follow copyright policies and procedures in the procurement of the works at issue. Specifically, Plaintiff has affirmatively destroyed evidence of source files that were used to create the depository copies of hundreds of movies in their copyright portfolio.

7.  Plaintiff has unclean hands through the use of unlicensed private investigators to collect and support the evidence in this case.  The "investigator" in this case, Tobias Fieser, has admitted in deposition testimony that he made thousands of false declarations on behalf of Malibu Media to support the Ex-Parte process, both nationally and in this district. Specifically, he claimed to have compared every work to every infringement claimed, but later recanted.

### IV.  DUE PROCESS

8.  Each of Plaintiff's works have a value that is less than $ 0.10. Plaintiff's copyright monetization model seeks to recover damages that exceed that value by a ratio of 1:7,500.00 at the low end to 1:1,500,000 at the high end. The statutory damage claim is unreasonable in view of *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996).

### V.  FAILURE TO JOIN NECESSARY PARTIES

9.  Plaintiff has failed to join all actual and potential joint infringers including, but not limited to, other participants in the BitTorrent swarm and the website that hosted the ".torrent' file.

### VI.  STATUTE OF LIMITATIONS- 17 U.S.C. 507

10.  At least one if not more of the alleged infringements occurred outside of the three-year statute of limitations, and claims related thereto are time barred.  Plaintiff has pled on Exhibit 3-1 that the work "Double Oh Heaven" was infringed on November 11, 2014, but the complaint was filed on November 21, 2017, more than 3 years after the alleged date of infringed.

### VII.  FAIR USE AND OTHER STATUTORY DEFENSES - 17 U.S.C. 107-122, 512

11.  Defendant is entitled to the statutory defenses under 17 U.S.C 107 to 17 U.S.C 122, and 17 USC 512 (DMCA).

### VIII.  SINGLE SATISFACTION AND EQUITABLE OFFSET

12.  Defendant claims that other members of the same torrent hash have settled barring further recovery.  Further Defendant is entitled to an equitable offset based on prior settlements for the same work.

### IX.  OTHER AFFIRMATIVE DEFENSES

13.  Defendant claims the right to amend these affirmative defenses as the evidence is gathered in this case.

**DEFENDANT'S COUNTERCLAIMS**

**STATEMENT OF FACTS AND NATURE OF COUNTERCLAIMS**

**The Parties**

1.     Plaintiff/Counter-Defendant Malibu Media., ("Malibu") has filed thousands of "bittorrent" lawsuits involving adult vignettes.

2.     Defendant, Donald Adams, ("Adams") is a married male in his early 60s.  He has never used BitTorrent, never watched any of Malibu Media's content and indeed had never heard of any of the Malibu Media content described in this Complaint prior to being notified of this litigation. Defendant's only connection to the alleged infringement is as the account holder for the IP address Plaintiff's subpoena to Comcast identified.

**Malibu Media's Copyright Monetization Model**

3.      Malibu Media is the most prolific filer of copyright lawsuits in the United States. To date Malibu Media has filed in excess of 5,000 copyright infringement lawsuits in the United States.

4.     Malibu Media's lawsuits follow a four-step business model that is used to minimize costs and maximize revenue.

      a.  The first step is to create volumes of undifferentiated pornographic works in a production-like process and put these works on "free" internet sites, such as Pornhub without any of the industry standard copyright notices.

      b.  The second step is to gather evidence of purported infringements by contracting with an overseas bittorrent monitoring firm ("IPP" in the porn

cases/"MaverickEye" in the non-porn cases) located in Germany. The cost
of this monitoring is essentially the cost of running a small computer and
having access to the internet.

c.   The third step is to create form pleadings for use by U.S. counsel, through
another overseas firm, this one located in the Phillipines. When the lawsuit
is filed using these form pleadings, Malibu incurs a nominal filing cost. An
*ex-parte* motion is filed to obtain the identity of the account holder for the
IP Address. This *ex-parte* motion uses the same form pleadings created by
overseas firms.

d.   Lastly, when the *ex-parte* motion is granted, the ISP releases the customer
information (the identity of the account holder for the IP address), the
account holder is faced with the Hobsons choice of retaining experienced
infringement counsel (cost > $ 5,000.00) or settling the case (cost <$
5,000.00) regardless of whether the person has infringed.

5.     Malibu's "Sue and Settle" model is consistent with expert analysis for Dr. Eric
Fruits. (See Exhibit 1).

6.     Malibu Media still does not send DMCA notices directly to the IP Address of the
account holder for the IP address of the alleged infringer.  Nor does Malibu Media have lawyers
send demand letters to the ISP's regarding infringement by the holder of these accounts.  The
reason is that such routine notice would solve the infringement problem and deprive Malibu
Media of the litigation revenue stream.

7.     The sole reason for these filings is to misuse the court's subpoena power to obtain lists of extortion targets – in many cases individuals with no liability – who will be coerced into settling the case with the looming threat of statutory damages of up to $150,000 for a single download. Thus, Plaintiff and Other Plaintiffs' counsel are frequently able to intimidate defendants into paying them money out of fear, even when the extortion target has done nothing wrong.

## COUNT 1 - DECLARATORY RELIEF

### NON-INFRINGEMENT OF MALIBU'S WORKS

8.     Adams has not infringed any of Malibu's works as alleged in the complaint. Although Adams is the account holder of the IP address that is at issue, this IP address could have been used by any person with access to the router at issue in this case.  Adams has not downloaded, viewed, or distributed any of the works at issue in this case.

9.     A controversy remains and requires affirmative action by this Court to determine the respective rights of the parties.

10.     Adams is entitled to a declaratory judgment of non-infringement, to his costs and attorneys' fees as a prevailing party pursuant to 17 U.S.C. § 505, and to such other and further relief as may be appropriate against Malibu.

## COUNT 2 - DECLARATORY RELIEF

### COPYRIGHT MISUSE OF MALIBU'S WORKS

11.     The copyright monopoly granted by the Constitution and as codified by Congress in 17 U.S.C. 101, et seq. provides guidance on how internet infringements are to be dealt with.

In particular Congress has codified a notice mechanism for copyright holders to address problems with Internet infringement. See 17 USC § 512.

12.     Malibu complains of mass infringement and claims to send thousands of DMCA notices a month in an effort to "curb infringement." None of these infringement notices are sent to the parties that are eventually sued. Further, none of the parties that ever get the DMCA notices are ever sued. This business model is designed to pay lip service to the DMCA process while maintaining their ability to extract revenues via the "Sue and Settle" business model. When Colette Pelissier declares in her thousands of form "Ex-Parte" declarations that: " *The only redress against Bittorrent based piracy is to initiate lawsuits against the Bittorrent users responsible for these unauthorized distributions,"* she misleads this Court and all courts where she has made identical declarations, because no genuine efforts have been made to either send a DMCA notice to the account holder via the ISP (which costs nothing) or to send a form demand letter from counsel to the ISP alleging the same infringements (which costs a stamp).

13.     This "Sue and Settle" business model is an abuse of the copyright monopoly granted because it extracts revenue via litigation from non-infringers and infringers alike. As such, as in the case of Adams, it seeks to assert copyright protections on an individual that never viewed the Malibu works referenced in this lawsuit.  For infringers, it results in a royalty that is far from reasonable and is contrary to public policy.  To extract $ 5,000.00 in settlement for works worth pennies is gross misuse of the judicial process and the copyright grant.

**ADAMS' PRAYER FOR RELIEF**

Adam respectfully prays that judgment be entered as follows:

**COUNT I – Declaratory Judgment of Non Infringement**

A. A declaration and entry of judgment that Malibu's claims for infringement be denied in their entirety;

B. Adams is the prevailing party under the Copyright Act;

C. Adams be entitled to statutory attorney fees under the Copyright Act;

D. Adams be entitled to costs of suit; and

E. Adams be entitled to any other relief that this Court may allow.

**COUNT II – Declaratory Judgment of Unenforceability of Copyrights**

A. A declaration that Malibu's manner of enforcing its copyrights are inequitable and unfair in view of the intent of the Copyright Act, and that such enforcement constitutes misuse of the grant of the copyright.

B. An order that the thirteen (13) works be declared unenforceable during the period that such inequitable and unfair enforcement occurs;

C. Adams be entitled to any other relief that this Court may allow.

Respectfully submitted,

/s/ Lisa L. Clay
Lisa L. Clay, Attorney at Law
345 North Canal Street
Suite C202
Chicago, IL 60606
Phone: 312.753.5302
ARDC # 6277257
Local counsel


/s/    Curt Edmondson
J. Curtis Edmondson, P.E.
3699 John Olson Place
Hillsboro, OR, 97124
503.336.3749
jcedmondson@edmolaw.com
Pro Hac Vice application forthcoming

**CERTIFICATE OF SERVICE**

Lisa L. Clay, an attorney, certifies that on July 5, 2018, she filed a copy of the foregoing
**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** with the ECF filing system, which will
cause notice to be provided to all counsel of record.


_____/s/___Lisa L. Clay_

18